873 A.2d 501

MARILYN A. STENEKEN, PLAINTIFF–RESPONDENT, v.
GARY L. STENEKEN, DEFENDANT–APPELLANT.

Argued November 9, 2004—Decided May 18, 2005.

*Todd M. Sahner* argued the cause for appellant (*Marcus, Brody, Kessler, Sahner & Weinstein,* attorneys).

*Bonnie C. Frost* argued the cause for respondent (*Einhorn, Harris, Ascher, Barbarito, Frost & Ironson,* attorneys).

Justice RIVERA–SOTO, delivered the opinion of the Court.

This appeal requires that we address whether, in setting an award of alimony and in establishing equitable distribution in respect of a closely-held corporation, the trial court must use the same income determination. As differently posed by defendant, the question is whether it is impermissible "double counting" to use actual income for alimony purposes but a lower "normalized" income amount when valuing a closely-held business for equitable distribution purposes.

We hold that a trial court's determination of the interplay between an alimony award and equitable distribution is subject to an overarching concept of fairness, bearing in mind the interrelated yet separate purposes of alimony versus equitable distribution. In specific, we hold that, for purposes of computing the proper alimony award, actual income of the paying spouse is the lodestar for determining the extent of that party's alimony obligation. We further hold that, for the purpose of valuing a closely-held corporation in determining the proper equitable distribution thereof, proper valuation techniques, which may include the normalization of excess salary expenses, are to be applied.

I.

Plaintiff Marilyn Steneken and defendant Gary Steneken were married on August 22, 1971. They had three children and, after more than twenty-four years of marriage, the Stenekens separated. Eighteen months later, on April 14, 1997, both parties filed separate formal complaints for divorce. The parties were able to resolve most of their differences except that they disagreed in respect of the interplay between the amount of alimony and the

equitable distribution of Esco Corporation (Esco), the largest marital asset subject to equitable distribution. The parties' dispute over that interplay has now generated more than seven years of litigation.

Defendant was the sole shareholder and operator of Esco, a company he acquired and built over the course of the marriage, and which allowed plaintiff and defendant to enjoy their marital lifestyle. For the five years leading up to the filing of the complaint for divorce, defendant's gross salary from Esco was as follows:

| Year | Salary |
|------|--------|
| 1996 | $207,797 |
| 1995 | $188,975 |
| 1994 | $131,760 |
| 1993 | $122,506 |
| 1992 | $125,961 |

In addition, defendant received "perks" from Esco varying in amount from $16,000 to $27,000 a year.

When valuing Esco, the trial court accepted the valuation of defendant's expert, who opined that, in determining his own salary, defendant had paid himself more than the market value of his services to Esco and that the reasonable value of his services to the company was, as of 1996, $150,000 a year. As a result, defendant's expert valued Esco as if the salary paid to defendant had been the lower $150,000 a year figure, thereby increasing the overall value of Esco. However, when determining the proper amount of alimony, the trial court similarly imputed to defendant the "normalized" salary used by the valuation expert in valuing Esco and not defendant's actual salary. On that basis, the trial court awarded plaintiff alimony in the amount of $4,000 per month.

Plaintiff appealed both the amount of alimony and the equitable distribution awarded to her. The Appellate Division corrected a mathematical error and affirmed the trial court's valuation of Esco for equitable distribution purposes, but reversed and remanded

the trial court's alimony award. According to the Appellate Division, the trial court improperly used defendant's "normalized" $150,000 a year income instead of defendant's actual income when computing the amount of alimony due plaintiff; however, the matter was remanded to the trial court because, in an unpublished decision, the Appellate Division concluded:

> We cannot conduct a meaningful appellate review of the alimony conclusion in the absence of sufficient findings of fact and conclusions of law, since we are unable to reconcile or determine an adequate basis for the conclusion as to defendant's income, nor determine the basis for the ultimate conclusion of plaintiff's entitlement to alimony in the amount of $48,000.
>
> [*Steneken v. Steneken*, No. A-3882-99T5 (App.Div. Apr. 10, 2002) (slip op. at 26–27).]

On remand, the trial court determined that it "was apparently in error in utilizing [the $150,000 a year normalized income figure for defendant] when it came time to make a determination as to how much alimony if any plaintiff was entitled to receive." After applying the criteria set forth in *N.J.S.A.* 2A:34–23b,[1] and considering the income plaintiff was then receiving in her recently renewed career as a school teacher, the trial court awarded plaintiff alimony in the amount of $5,500 per month, an increase of $1,500 per month from the trial court's earlier alimony award.

It was then defendant's turn to appeal. Before the Appellate Division, and again before this Court, defendant claimed that the trial court's use of different income figures for alimony and equitable distribution purposes constituted impermissible "double counting." According to defendant, the Appellate Division accurately framed the issue as

> whether it is impermissible "double counting" to value defendant's business based on his reasonable, rather than actual, compensation and then to calculate alimony based on the same excess salary that was added back to business income, thus increasing the value of the corporate asset for which plaintiff already received her share in equitable distribution.

---

[1] There are two statutory references to *N.J.S.A.* 2A:34–23b as codified under Chapter 34 of Title 2A of the New Jersey Statutes. The first is to subsection b of *N.J.S.A.* 2A:34–23 and the second is to an entirely separate section codified as *N.J.S.A.* 2A:34–23b. As used here, *N.J.S.A.* 2A:34–23b refers exclusively to subsection b of *N.J.S.A.* 2A:34–23.

[*Steneken v. Steneken,* 367 *N.J.Super.* 427, 430, 843 *A.*2d 344 (App.Div.2004).]

In the Appellate Division's view, the last paragraph of *N.J.S.A.* 2A:34–23b sets forth the full extent of New Jersey's prohibition on "double counting" assets for alimony versus equitable distribution purposes:

> When a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the court shall not consider income generated thereafter by that share for purposes of determining alimony.

Thus, the Appellate Division reasoned:

> In New Jersey, the bar against double counting of pensions is restricted to income from pension benefits that have been treated as an asset for equitable distribution purposes. Conversely, the rule does not bar counting as income for determining alimony that portion of the former spouse's pension attributable to post-divorce employment, and therefore not subject to division as marital property at time of divorce. In other words, a supporting spouse's pension may be considered for purposes of alimony to the extent that post-divorce earnings enhance its value. By the same token, although assets purchased with the proceeds of a divisible pension award are not "income" for alimony purposes to the extent they reflect return of the principal, income generated by the principal is eligible for inclusion in the calculus used in revising an alimony award.
>
> [*Steneken v. Steneken, supra,* 367 *N.J.Super.* at 437–38, 843 *A.*2d 344 (citations omitted).]

The Appellate Division concluded that "New Jersey is not alone in restricting the prohibition against double counting to pension benefits." *Id.* at 438, 843 *A.*2d 344.

We granted certification, 180 *N.J.* 357, 851 *A.*2d 651 (2004), and subject to the modifications that follow, affirm the judgment of the Appellate Division.

## II.

" 'There are [ ] few assets whose valuation impose as difficult, intricate and sophisticated a task as interests in close corporations.' " *Torres v. Schripps, Inc.,* 342 *N.J.Super.* 419, 435, 776 *A.*2d 915 (App.Div.2001) (quoting *Lavene v. Lavene,* 148 *N.J.Super.* 267, 275, 372 *A.*2d 629 (App.Div.), *certif. denied,* 75 *N.J.* 28, 379 *A.*2d 259 (1977)). As we recognized in *Bowen v. Bowen,* 96 *N.J.* 36, 44, 473 *A.*2d 73 (1984), in the valuation of a business, "[t]here is no single formula that will apply to each enterprise."

Although there is no general formula that will apply to the "many different valuation situations," the ultimate "goal is to arrive at a fair market value for a stock for which there is no market." *Ibid.* Therefore, in order to provide context to this controversy, we focus first on the methods of valuation recognized in our jurisprudence.

Valuation techniques, regardless of the approach selected, are to be measured against a reasonableness standard. *See Bowen v. Bowen, supra,* 96 *N.J.* at 44, 473 *A.*2d 73 ("The reasonableness of any valuation depends upon the judgment and experience of the appraiser and the completeness of the information upon which his conclusions are based."). *See, e.g., Dugan v. Dugan,* 92 *N.J.* 423, 457 *A.*2d 1 (1983) (providing guidance on valuing an attorney's professional corporation law practice for equitable distribution purposes). Of these techniques, there are "[t]hree principal methods which can be used for developing a value for ownership in a closely held corporation. . . ." *Lavene v. Lavene,* 162 *N.J.Super.* 187, 197, 392 *A.*2d 621 (Ch.Div.1978) (on remand). Those are the income or capitalized earnings method, the market approach method, and the cost approach method. *See generally id.* at 197–98, 392 *A.*2d 621 (defined respectively as (a) "Capitalization of indicated earnings at a reasonable return on investment based on relative risk and current interest rates;" (b) "Comparison with price earnings ratios of publicly traded companies in the same or comparable industry;" and (c) "Appraisal of all underlying assets, tangible and intangible, with adjustment for existing liabilities"). Flexibility must be the byword in determining which approach is best suited in a particular instance because "[t]here is no inflexible test for determining fair value, as valuation is an art rather than a science [that] . . . requires consideration of proof of value by any techniques or methods which are generally acceptable in the financial community and otherwise admissible in court." *Lawson Mardon Wheaton, Inc. v. Smith,* 160 *N.J.* 383, 397, 734 *A.*2d 738 (1999) (citations and internal quotation marks omitted). We acknowledge that "[v]aluing a closely-held corpora-

tion is a difficult task [that] ... is fact sensitive and depends upon the experience of the appraiser and the completeness of the information upon which his conclusions are based [because] ... the valuation of closely-held corporations is inherently fact-based and thus not an exact science." *Torres v. Schripps, Inc., supra,* 342 *N.J.Super.* at 435, 776 *A.*2d 915 (citations and internal quotation marks omitted).

The trial court adopted the income approach valuation methodology propounded by defendant's own expert, and plaintiff raises no quarrel with it. Therefore, we need not address here which valuation method should have been used by the trial court in order to value Esco for equitable distribution purposes; we need only address whether the valuation methodology in fact used by the trial court was proper. We conclude that, under the circumstances present here, the use of the income or capitalized earnings approach in the valuation of Esco as used by defendant's expert, including the adjustments made by him in order to normalize income and expenses, was appropriate. We see no reason to disturb that analysis, its attendant conclusions, or the trial court's reliance thereon.

### III.

■ Much of the controversy inherent in this appeal stems from the unspoken premise that because alimony and equitable distribution are interrelated, a credit on one side of the ledger must perforce require a debit on the other side; otherwise, defendant claims, the interplay between alimony and equitable distribution results in "double counting." We disagree.

■ We start from the bedrock proposition that all alimony awards and equitable distribution determinations must—both jointly and severally—satisfy basic concepts of fairness. In reaching that ultimate determination, we are guided by the principle that, although clearly interrelated, the structural purposes of alimony and equitable distribution are different. We recently "reaffirm[ed] the *Lepis [v. Lepis,* 83 *N.J.* 139, 416 *A.*2d 45 (1980)]

principle that the goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage." *Crews v. Crews*, 164 *N.J.* 11, 16, 751 *A.*2d 524 (2000). Our application of that principle is straightforward:

> The supporting spouse's obligation is set at a level that will maintain that standard. Although the supporting spouse's current income is the primary source considered in setting the amount of the [alimony] award, his or her property, capital assets, and "capacity to earn the support awarded by diligent attention to his [or her] business" are also proper elements for consideration.
>
> [*Innes v. Innes*, 117 *N.J.* 496, 503, 569 *A.*2d 770 (1990) (citations omitted).]

 In contrast, equitable distribution determinations are intended to be in addition to, and not as substitutes for, alimony awards. As the governing statute makes clear:

> Incident to the grant of divorce "... the court may make ... [an] award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage."
>
> [*Painter v. Painter*, 65 *N.J.* 196, 205, 320 *A.*2d 484 (1974) (citing *N.J.S.A.* 2A:34–23h).]

When we first spoke of the concept of equitable distribution as originally adopted in *L.* 1971, *c.* 212, effective September 13, 1971, and now codified at *N.J.S.A.* 2A:34–23, we explained the rationale for equitable distribution as follows:

> [T]he division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways is akin to a partnership. Only if it is clearly understood that far more than economic factors are involved, will the resulting distribution be equitable within the true intent and meaning of the statute. The widely pervasive effect this remedial legislation will almost certainly have throughout our society betokens its great significance.
>
> [*Rothman v. Rothman*, 65 *N.J.* 219, 229, 320 *A.*2d 496 (1974) (citation omitted).]

In sum, as the Appellate Division here succinctly stated, "[t]he goal of equitable distribution ... is to effect a fair and just division of marital assets." *Steneken v. Steneken, supra,* 367 *N.J.Super.* at 434, 843 *A.*2d 344.

 The conclusion that alimony and equitable distribution are separate yet interrelated and ultimately subject to an overriding sense of fairness is buttressed by our statutory scheme, where the

separate powers to award alimony and determine equitable distribution are codified. *N.J.S.A.* 2A:34–23b sets forth the power of the trial court to award alimony and lists, on a non-exclusive basis, those factors the trial court must consider in that context. Again, in contrast, *N.J.S.A.* 2A:34–23.1 implements the trial court's power to award equitable distribution, also listing those non-exclusive factors that the trial court must consider. There are strong parallels between these two statutorily required lists of factors; they, however, are not entirely congruent. Thus, for example, although *N.J.S.A.* 2A:34–23b(10) makes relevant to an alimony award "[t]he equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair," no parallel or equivalent provision appears in the equitable distribution statute.[2] Each of the statutory considerations for an award of alimony and the considerations for equitable distribution remains true to its respective original and independent goals—for alimony, "to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage," *Crews v. Crews, supra,* 164 *N.J.* at 16, 751 *A.*2d 524, and for equitable distribution, "to effect a fair and just division of marital assets." *Steneken v. Steneken, supra,* 367 *N.J.Super.* at 434, 843 *A.*2d 344.

Principles of fairness that properly account for the dichotomy between alimony, on the one hand, and equitable distribution, on the other, are what inform our analysis.

## IV.

Defendant argues that plaintiff will receive the benefit of defendant's income twice: once in the increased valuation of Esco for

---

[2] The reasoning behind the statutory grant of authority to pay an equitable distribution award "out of current income" is grounded in common sense: many equitable distribution awards involve sizable buy-outs that cannot be accomplished except over time.

equitable distribution purposes and then again in the computation of alimony. According to defendant, the rulings below allow plaintiff to "double count" or "double dip," that is to say, they allow plaintiff to reach the same asset twice, once for alimony purposes and again as part of equitable distribution. The logical flaw in defendant's argument lies at its core. Defendant mistakenly equates the statutory and decisional methodology applied in the calculation of alimony with a valuation methodology applied for equitable distribution purposes that requires that revenues and expenses, including salaries, be normalized so as to present a fair valuation of a going concern. Simply said, defendant's charged mischaracterization of the issue here as one of "double counting" both misstates the issue and ignores the fundamental principles that undergird related yet nonetheless severable alimony and equitable distribution awards. As our statutory framework and decisional precedent make clear, the proper issue is whether, under the circumstances, the alimony awarded and the equitable distribution made are, both singly and together, fair and consistent with the statutory design.

Although some jurisdictions do prohibit the disparate alimony and equitable distribution calculations defendant finds objectionable, others allow it. *See Steneken v. Steneken,* 367 *N.J.Super.* 427, 436, 843 *A.2d* 344 (App.Div.2004) (collecting cases). Because we embrace the premise that alimony and equitable distribution calculations, albeit interrelated, are separate, distinct, and not entirely compatible financial exercises, and because asset valuation methodologies applied in the equitable distribution setting are not congruent with the factors relevant to alimony considerations, we conclude that the circumstances here present a fair and proper method of both awarding alimony and determining equitable distribution.

We find no inequity in the use of the individually fair results obtained due to the use of an asset valuation methodology normalizing salary in an on-going close corporation for equitable distribution purposes, and the use of actual salary received in the calculus

of alimony. The interplay of those two calculations does not constitute "double counting."

Recognizing that asset valuations involve elements of both art and science, the valuation of a closely-held going concern perforce implicates what a knowledgeable buyer is willing to pay and requires that revenues and expenses be normalized. Separately, the alimony award must be made. Once the trial court is satisfied both that the alimony award "assist[s] the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage," *Crews v. Crews*, 164 *N.J.* 11, 16, 751 *A.*2d 524 (2000), and that the equitable distribution award "effect[s] a fair and just division of marital assets," *Steneken v. Steneken, supra,* 367 *N.J.Super.* at 434, 843 *A.*2d 344, the final judicial inquiry is plainly put: whether the ultimate result, both in its whole as well as in its constituent parts, is fair under the circumstances and congruent with the standards set forth in *N.J.S.A.* 2A:34–23 (alimony) and –23.1 (equitable distribution).

The logical force of this conclusion is highlighted by the facts of this case. At defendant's proffer, the trial court accepted the capitalization of income approach for the valuation of defendant's closely-held corporation. That approach required an adjustment to the expense recorded as defendant's salary as part of the valuation process. Had the experts determined, and the court found, that another valuation methodology was appropriate for valuing a closely-held corporation, the adjustment to expenses by normalizing defendant's salary may or may not have been a factor. Thus, the valuation methodology chosen for equitable distribution purposes should not alter the alimony award, as the latter should be based on the factors enumerated in *N.J.S.A.* 2A:34–23b and we have always emphasized that the income earned by the parties is a key factor in the award of alimony.

In reality, defendant retained the same employment role and, as far as the record reveals, the same income in the closely-held corporation both before and after the judgment of divorce. There

is no evidence that he would not continue to earn substantially the same income after the judgment of divorce as he did during the marriage. Defendant's salary did not change merely because the chosen valuation methodology required that the expense his salary represented to the going concern subject to equitable distribution had to be normalized. Under those circumstances, the trial court should consider the paying spouse's actual income for alimony purposes, and not a valuator's normalized salary expense figure generated for equitable distribution valuation purposes.[3]

Although we are modifying the Appellate Division's approach,[4] we nonetheless embrace the flexibility inherent in the Appellate Division's reasoning when it

> decline[d] to adopt the "either-or" notion inherent in the so-called double-counting rule, certain that in appropriate instances, proper adjustments to equitable distribution on the one hand, or the alimony award on the other, or both, may be made to satisfy its underlying goal of fairness. Indeed, to the extent the rule is designed to avoid unfairness by carefully considering the division of assets and the probable effect of that division on the need for spousal support, it is not only theoretically sound, but squarely consistent with the statutory command to take into account an asset's role in equitable distribution in setting a proper amount of alimony. *See* *N.J.S.A.* 2A:34-23b.
>
> [*Steneken v. Steneken, supra,* 367 *N.J.Super.* at 441, 843 *A.*2d 344.]

Where, as here, the major marital asset is a closely-held corporation and the supporting spouse has determined what his or her income was during the marriage, the supported spouse is entitled, post-divorce, both to alimony sufficient to maintain a reasonably comparable lifestyle and to a fair division of the asset. We do not agree with defendant's view that this analysis effects a "windfall" to the supported spouse. Trial courts remain free to consider, in

---

[3] Nothing in this opinion restricts the parties' later right to seek modification of the alimony award based on changed circumstances, including salary deferrals designed to fund needed capital improvements in Esco.

[4] We expressly do not sustain the distinction made by the Appellate Division between the fact that "valuation of the corporate asset was based on defendant's past earnings, not his future earnings" whereas "defendant's actual current and future compensation may be treated as income for alimony purposes." *Steneken v. Steneken, supra,* 367 *N.J.Super.* at 440, 843 *A.*2d 344.

the exercise of their discretion and in accordance with the statutory guidelines,[5] the fair and proper quantum of alimony and equitable distribution attendant to each case before them.

## V.

As modified by this opinion, the judgment of the Appellate Division is affirmed.

Justice LONG, dissenting.

As the majority points out, there is authority for and against the proposition that using a single income stream to value a business, and as an alimony source, is double-counting. Indeed, the view of the New York Court of Appeals is directly contrary to that adopted by my colleagues:

> We agree with the defendant that the Supreme Court impermissibly engaged in the "double counting" of income in valuing his business, which was equitably distributed as marital property, and in awarding maintenance to the plaintiff (*see Grunfeld v. Grunfeld*, 94 *N.Y.*2d 696, 709 *N.Y.S.*2d 486, 731 *N.E.*2d 142; *McSparron v. McSparron*, 87 *N.Y.*2d 275, 639 *N.Y.S.*2d 265, 662 *N.E.*2d 745).
>
> Here, the valuation of the defendant's business involved calculating the defendant's projected future excess earnings. Thus, in valuing and distributing the value of the defendant's business, the Supreme Court converted a certain amount of the defendant's projected future income stream into an asset. However, the Supreme Court also calculated the amount of maintenance to which the plaintiff was entitled based on the defendant's total income, which must have included the excess earnings produced by his *business*. This was improper. "Once a court converts a

---

5 In 1988, the Legislature, on a limited basis, excepted from equitable distribution reach the income generated by a retirement share when the retirement share itself was subject to equitable distribution. *L.* 1988, *c.* 153, § 3, *codified at N.J.S.A.* 2A:34–23b ("When a share of a retirement benefit is treated as an asset for purposes of equitable distribution, the court shall not consider income generated thereafter by that share for purposes of determining alimony."). *See also D'Oro v. D'Oro*, 187 *N.J.Super.* 377, 454 *A.*2d 915 (Ch.Div.1982), *aff'd*, 193 *N.J.Super.* 385, 474 *A.*2d 1070 (App.Div.1984) (holding that income flow from a pension, the value of which was previously subject to equitable distribution, cannot be considered as income for alimony modification purposes); *Innes v. Innes*, 117 *N.J.* 496, 569 *A.*2d 770 (1990) (holding that assets derived from equitably divided pension benefits, or income therefrom, are not "income" for alimony purposes when they reflect return of pension principal).

specific stream of income into an asset, that income may no longer be calculated into the maintenance formula and payout." (*Grunfeld v. Grunfeld, supra,* at 705, 709 *N.Y.S.*2d 486, 731 *N.E.*2d 142; *see McSparron v. McSparron, supra* ).

[*Murphy v. Murphy,* 6 *A.D.*3d 678, 775 *N.Y.S.*2d 370, 372 (N.Y.App.Div.2004); *see also Sodaro v. Sodaro,* 286 *A.D.*2d 434, 729 *N.Y.S.*2d 731 (N.Y.App.Div.2001) (stating court engaged in improper double counting in valuing husband's psychiatry practice while awarding maintenance to wife based on husband's total imputed income).]

A similar result was reached by the New Hampshire Supreme Court in *Rattee v. Rattee,* 146 *N.H.* 44, 767 *A.*2d 415 (2001). There, the trial court, in valuing the parties' interests in the defendant's business for equitable distribution, normalized defendant's salary from an average of $326,000 to $100,000 per year because the defendant's income exceeded the reasonable compensation for his services. *Id.* at 418. The difference between those figures was added back into the company's operating income for valuation. For alimony purposes, the court used the same normalized income figure. The New Hampshire Supreme Court held that, to avoid double-counting when calculating alimony, the trial court properly considered the defendant's income to be the "normalized" $100,000, reasoning that his income in excess of $100,000 had already been taken into account in valuing defendant's interest in the company for equitable distribution. *Id.* at 420; *see also* Gary Trugman, *Understanding Business Valuation: A Practical Guide to Valuing Small to Medium Sized Businesses* 862 (2d ed.2002).

To be sure, what occurred in this case, and what occurs in cases like it, is not dollar-for-dollar double-counting because more than Mr. Steneken's excess earnings played a role in the ultimate valuation of Esco. (The fair market value of real estate and a payable mortgage were also included.) Nor is it the classic double-dipping that has been interdicted in the pension area. In those cases, in which the value of the pension has been equitably distributed, the double-dipping is said to occur when one party later seeks to tap the other's periodic pension payments as income for alimony. Concededly, what happened here is quite different.

Nevertheless, it cannot be denied that by using Mr. Steneken's full salary for alimony while "pouring" a portion of it back into Esco to estimate the company's future earning capacity, thus ratcheting up its value, the court considered the same income stream twice. It is the majority's unrestrained approval of that circumstance that is the source of my disagreement.

To me, the answer is neither to allow the unfettered dual use of a single income stream nor to require the rigid reconciliation adopted by the trial judge who felt compelled to use the same figure for both calculations. Rather, judges should be able to use the "real" income for alimony and the "normalized" income for the corporate valuation so long as the ultimate outcome recognizes that a single income source (the difference between the real and normalized income) played a part in both.

That "modified" approach is the one the Appellate Division adopted and the majority specifically rejects. *supra*, 183 *N.J.* 290, 303, 873 *A.*2d 501 (2005). Although the Appellate Division refused to categorize what occurred in this case as double-counting, Judge Parillo, who penned the decision for the court, was careful not to adopt a categorical rule approving that procedure in all instances:

> We decline to adopt the "either-or" notion inherent in the so-called double-counting rule, certain that in appropriate instances, proper adjustments to equitable distribution on the one hand, or the alimony award on the other, or both, may be made to satisfy its underlying goal of fairness. Indeed, to the extent the rule is designed to avoid unfairness by carefully considering the division of assets and the probable effect of that division on the need for spousal support, it is not only theoretically sound, but squarely consistent with the statutory command to take into account an asset's role in equitable distribution in setting a proper amount of alimony. *See N.J.S.A.* 2A:34–23(b). *In our view, the extent to which the asset may be looked to as a source of alimony should be influenced by the extent to which its value was distributed to the supported spouse as part of the equitable division of marital property.*

> Our quarrel is with the rule's absolute ban on dual consideration. Although in certain circumstances it would be unfair to look to a marital asset as a source for both alimony and equitable distribution, it is simply too categorical to conclude that because an asset is treated as a marital asset for the purposes of equitable distribution, it can never be regarded as a partial source of alimony. Such an absolute bar on counting the asset in the property division and the alimony formula

disregards the interrelationship between the two and impermissibly encroaches on the judicial function to consider *all relevant circumstances*. The Wisconsin Supreme Court's cautioning in *Cook, supra,* against application of the double-counting rule in a rigid way, bears repeating here:

> Such an inflexible rule runs counter to the equitable nature of these determinations and to purposes underlying the broad legislative authorization that the circuit court consider relevant financial information in dividing the property and setting the level of maintenance.... Rather, the double[-]counting rule serves to warn parties, counsel and the courts to avoid unfairness by carefully considering the division of income-producing and non-income producing assets and the probable effects of that division on the need of maintenance....

[367 *N.J.Super.* at 442, 843 *A.*2d 344 (quoting *Cook v. Cook,* 208 *Wis.*2d 166, 560 *N.W.*2d 246, 252 (Wis.1997))(emphasis added).]

I would adopt that analysis. Rather than a hard and fast rule, I would instead encourage courts to carefully analyze the facts in each case and to consider modulating either the corporate value or the alimony award to the extent that the same income was considered in both calculations. I would therefore reverse and remand the case to the trial judge for application of that flexible approach to the issues before him.

Justices ZAZZALI and ALBIN join in the dissent.

*For affirmance*—Chief Justice PORITZ and Justices LaVECCHIA, WALLACE and RIVERA–SOTO—4.

*For dissent*—Justices LONG, ZAZZALI and ALBIN—3.