**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4734-16T3

JACQUELINE BAPTISTE,

    Plaintiff-Appellant,

v.

ALBERTO BAPTISTE,

    Defendant-Respondent.

_____

              Submitted September 20, 2018 – Decided September 6, 2019

              Before Judges Fuentes, Accurso and Vernoia.

              On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-1024-14.

              Thomas John Hurley, attorney for appellant.

              Pellettieri Rabstein & Altman, attorneys for respondent (John A. Hartmann, III, of counsel and on the brief; Nicole Joy Huckerby, on the brief).

PER CURIAM

Plaintiff Jacqueline Baptiste appeals from a March 10, 2017 judgment of divorce, which ended her thirty-two-year marriage to defendant Alberto Baptiste following an eight-day trial over equitable distribution and alimony. We reverse. The trial judge's failure to make adequate factual findings as to the parties' marital lifestyle and the sums each was receiving in equitable distribution left the award of open-durational alimony without sufficient support in the record. We further find the judge erred in refusing to rule on plaintiff's motion for pendente lite support and in declining to award plaintiff counsel fees despite the vast disparity in the parties' incomes.

The parties were both fifty-eight-years old at the time of the divorce in June of 2014. They have two daughters, then aged twenty-three and nineteen. They agreed their oldest daughter was emancipated, although still living with plaintiff in the marital home. Their younger daughter was a junior in college at the time of trial.

This case got off to a poor start for plaintiff. After filing a complaint for divorce in June 2014, her lawyer failed to communicate with her, complete her CIS, or respond to discovery. His dereliction led, unbeknownst to plaintiff, to the dismissal of her pleadings in February 2015 and an award of counsel fees against her. On learning that a default hearing was scheduled, plaintiff filed a pro se motion to remove her lawyer and vacate the default in April. Defendant

opposed that motion. The court entered an order permitting vacation of the default conditioned on all discovery being completed within thirty days.

Plaintiff retained new counsel, served discovery and filed another motion to vacate default and for pendente lite relief. That was in July 2015. Defendant opposed that motion as well and cross-moved for an award of counsel fees, to list the marital home for sale and to direct plaintiff to cooperate with an employability expert. He declined to respond to plaintiff's pendente lite motion, claiming she did not have the right to any relief from the court because she was still in default, and he was in any event voluntarily paying the expenses of the marital home, plaintiff's auto insurance, as well as college tuition and expenses for their younger daughter.

The court entered an order in August reflecting the parties' agreement on remaining discovery and the entry of a consent order vacating default. It also established dates for plaintiff to respond to defendant's motion for counsel fees and for defendant to respond to plaintiff's pendente lite motion and set a return date on those motions for September.

By then, a new judge was assigned responsibility for the matter. Defendant filed opposition to the pendente lite motion, again arguing it should be denied because of his voluntary assumption of the expenses of the marital home and payment of plaintiff's auto insurance. He also argued that the prior

3

judge, while "permitt[ing] [plaintiff] back in the case when she remedied her discovery deficiencies, . . . <u>did not anticipate opening this matter up for extensive litigation</u>." He argued "[a]n extensive pendente lite support motion was certainly not anticipated at that time and should not be granted given [his] voluntary support payments and the delays caused in this matter by Plaintiff and/or her former counsel."

The new judge did not decide or even acknowledge receipt of plaintiff's motion for pendente lite relief. When the motion plaintiff filed in July 2015 still had not been heard in February, plaintiff filed another motion for pendente lite relief. That motion, likewise, was never heard. The parties were not divorced until March 2017. In the opinion accompanying the divorce judgment, the trial court judge acknowledged "[a] motion for pendente lite support had been filed by Plaintiff, but in light of the ongoing voluntary support being paid by Defendant, the motion was not entertained by the Court."

Trial court judges enjoy considerable discretion "as to the mode and scheduling of disposition of motions," <u>R.</u> 5:5-4(a); 1:6-2(b)(1), but that discretion obviously does not extend to refusing to hear a properly filed motion for pendente lite support. The trial court's failure to have addressed plaintiff's motion, which the first judge scheduled for September 2015, was a dereliction of its responsibility to conscientiously respect the right of plaintiff to be heard.

See D'Amore v. D'Amore, 186 N.J. Super. 525, 530 (App. Div. 1982) (recognizing "the fundamental right of the public to access to the courts in order to secure adjudication of claims on their merits").  Having reviewed the record, we agree with plaintiff that the court's failure to have addressed the motion prejudiced her throughout the remainder of the case and left her with the not unreasonable impression the proceedings were tilted against her.  See DeNike v. Cupo, 196 N.J. 502, 517 (2008).

In addition to refusing to address plaintiff's pendente lite motion based on defendant's voluntary payments, the court's finding after trial that defendant voluntarily "maintained all of [plaintiff's] Schedule A and B expenses for the entire pendente lite period" appears overstated.  Plaintiff did not dispute that defendant paid the mortgage, taxes, and insurance and made certain car payments, including auto insurance.  Plaintiff disputed, however, that defendant assumed all of her Schedule A expenses.  Moreover, defendant never claimed he was paying all of plaintiff's Schedule B expenses.  That discrepancy is minor when compared with other problems revealed by this record.

We note, with particular concern, our inability to review the equitable distribution and alimony awarded because of the trial court's failure to specify the sums plaintiff was to receive in equitable distribution or to make specific findings as to the standard of living established during the parties' thirty-two-

year marriage. Although our review of decisions of the Family Part is ordinarily deferential, see Cesare v. Cesare, 154 N.J. 394, 412-13 (1998), here, the trial court's failure to make critical findings simply deprives us of any ability to determine whether "the alimony awarded and the equitable distribution made are, both singly and together, fair and consistent with the statutory design," Steneken v. Steneken, 183 N.J. 290, 301 (2005).

Specifically, the trial court, although acknowledging its initial task was to "identify the assets subject to equitable distribution and assign appropriate values before allocating the assets consistent with the statutory factors," in accordance with Rothman v. Rothman, 65 N.J. 219, 232 (1974), failed to value the parties' most significant asset, the marital home. Instead, after noting the mortgage balance of $100,605 as of a date two years prior, the court found "there does not need to be a value assigned to this asset" because it ordered the property listed for sale with the equity to be split evenly. An equal percentage allocation of the equity does not discharge the court's obligation to assign a value to the asset. See ibid.

Even more troubling is the court's failure to determine "the amount the parties needed during the marriage to maintain their lifestyle," Weishaus v. Weishaus, 180 N.J. 131, 145 (2004), that is, the marital standard of living. The

trial court judge's findings on the standard of living established during the marriage were as follows:

> The parties and their children led a middle-class lifestyle during the marriage. The parties' primary expense during the marriage was the private school and college tuition for their two daughters. The parties did not frequently dine out at expensive restaurants nor did they vacation extensively. Plaintiff herself testified during her direct examination that the parties occasionally ate at nicer restaurants, but often they ate at the Olive Garden and other neighborhood restaurants. She testified that they shopped for clothes at White House Black Market, Lord & Taylor, Express, and Gap. The family vacationed primarily in Florida during the marriage; however, they had not taken a vacation in many years.

The judge nowhere addressed the amount of money the parties spent each month during the course of their marriage. It matters not what the parties spent their money on, whether private school tuition or nice vacations; the amount expended is the critically important finding. See ibid. (noting that in determining the marital standard "the court establishes the amount the parties needed during the marriage to maintain their lifestyle" without regard to the source of the funds or how they were expended). Although plaintiff's income and earning capacity on her recent return to the workforce after a twenty-year

7

absence while raising the parties' children were hotly disputed,[1] there was no dispute over defendant's income. Defendant's base salary of $234,100 has remained consistent for a decade. He also receives large annual bonuses, bringing his annual salary to $316,996 in 2013; $366,824 in 2014; and $334,177 in 2015. Defendant's CIS lists the family's monthly expenses as $13,706. In her CIS filed shortly before trial, plaintiff claims their monthly expenses were $16,487.

The trial judge never addressed the discrepancy or indeed ever mentioned it. Instead, the court criticized plaintiff's updated CIS listing monthly expenses of $11,615 because plaintiff did not provide an anticipated budget, and she included "shelter expenses associated with the marital home" and $3000 in college expenses "which have been continuously paid by Defendant." Plaintiff,

---

[1] The parties agree plaintiff returned to work in 2011, two-and-a-half years before she filed her complaint for divorce. She is employed as an executive assistant to the President and Chief Executive Officer of a non-profit advocacy group. Plaintiff earned $17.50 an hour and worked a thirty-hour week. She certified in July 2015 that her annual base salary was $25,500, although she noted she received an extra $1000 per month from August 2014 through August 2015 on account of a grant awarded to the agency. She testified at trial that the grant was extended through January 2016, but had then ended. Plaintiff's 2013 W-2 revealed earning of $23,275; her 2014 W-2 earnings of $30,825; and 2015 W-2 earnings of $54,850. Plaintiff's employability expert testified in light of her age, skills and limited funding of her current employer, her earning capacity was $33,620. Defendant's employability expert testified her earning capacity as an administrative assistant in East Windsor was between $72,237 and $83,007. The court imputed income to plaintiff at the level of her 2015 earnings, $54,850.

however, was advocating that she remain in the marital home, buying out defendant's interest, which would mean absorbing those expenses. That defendant assumed certain expenses for plaintiff pendente lite does not mean those expenses vanished. Indeed, after criticizing plaintiff for including tuition expenses "none of which have been paid by Plaintiff since the complaint was filed," the judge assigned plaintiff seventeen percent of those expenses going forward.

The trial court judge's failure to determine the marital standard of living left her unable to conclude the open durational alimony award of $2500 a month augmented by twenty percent of defendant's annual net bonus would permit plaintiff to "maintain a lifestyle that is reasonably comparable to the standard of living enjoyed during the marriage," Crews v. Crews, 164 N.J. 11, 17 (2000), and indeed the judge did not do so. Instead, the judge merely concluded "Defendant's $2500 suggested monthly alimony figure to be an equitable amount for payment to the Plaintiff." See Hughes v. Hughes, 311 N.J. Super. 15, 31 (App. Div. 1998) (holding "[b]are survival is not the proper standard, it is the quality of the economic life during the marriage that determines alimony").

The rationale for even that finding, which, of course, is not the standard, is elusive. Plaintiff's updated CIS represented her monthly expenses to be $11,615. The judge noted that "Defendant suggested adjustments to Plaintiff's

CIS expenses," without detailing them or noting that defendant's suggested monthly budget for plaintiff was $3780, a reduction of almost two-thirds. The judge stated she did "not accept all [defendant's] proposed adjustments; however, after examining carefully the expenses set forth, Plaintiff's Schedule A shall be adjusted to $2,272; Schedule B shall be adjusted to $533, and Schedule C expenses shall be adjusted to $2,647 for a total monthly budget for Plaintiff of $5,452 per month," a figure less than half of what plaintiff said she needed, with no explanation of what "adjustments" the judge made or why.

Defendant's post-divorce budget for himself was $13,740 a month, a number slightly higher than what he claimed was the family's monthly budget. The judge stated she found defendant's CIS expenses "to be generally acceptable," and "[a]fter adjustment," which was also not explained, "accepted" defendant's monthly expenses to be $10,035. The judge nowhere explains why the budget she "accepted" for defendant was almost twice the budget she assigned plaintiff.

In addition to claiming the trial judge erred in failing to rule on her pendente lite motion and that the judge's decisions on equitable distribution and alimony are not supported by the record, plaintiff also claims the court erred in failing to award her counsel fees. We agree here as well.

In addressing counsel fees, the court found:

Both parties have made applications for counsel fees, and the Court denies both parties' applications. While it may seem that the disparity in income might result in an order requiring Defendant to contribute to Plaintiff's counsel fees, that factor alone does not overcome the remaining factors, including that Plaintiff, even in her counsel's Certification of Services, continues to understate her income, utilizing the 2014 figure of $27,000 instead of the $54,850 Plaintiff actually earned in 2015. Defendant, contrary to Plaintiff's claim, has not acted unreasonably throughout this litigation; indeed, as set forth above, Defendant has voluntarily maintained the shelter and transportation expenses of [Plaintiff] and has continued to be solely responsible for [the younger daughter's] college costs. Further, Defendant, since the litigation's inception, has agreed that equitable distribution of the parties' assets should be on a 50/50, basis, and he has agreed that this is a case where alimony is required. Plaintiff's claims that Defendant acted unreasonably by not consenting to vacate default after issues arose with Plaintiff's prior counsel are rejected. Thus, while the disparity in income will not overcome the remaining factors such that the Court will require a contribution by Defendant to Plaintiff's counsel fees, that same disparity will not equitably permit an award from Plaintiff to Defendant for his counsel fees. Each party shall be responsible for his or her own attorney's fees.

We fail to see how plaintiff's counsel's reference in her fee certification to plaintiff's 2014 income of $27,000, a year when defendant earned $366,824, instead of her 2015 income of $54,850, a year when defendant earned $334,177 supports the denial of plaintiff's request for an award of counsel fees. There is a vast disparity in the parties' incomes, no matter what year one compares. Nor

11

do we find defendant's voluntarily assumption pendente lite of mortgage payments that would have otherwise undoubtedly gone into default or their daughter's college expenses and his concession that the parties' thirty-two-year marriage should result in an even split of their assets and an award of alimony to plaintiff should relieve him of any contribution to plaintiff's fees.

The trial judge declined plaintiff's request that she be allowed to buy out defendant's interest in the marital home because "it would not be possible for Plaintiff to accomplish that buy-out without significantly diminishing her liquid and/or retirement assets to do so." The judge found that

> [e]ven assuming that Plaintiff is able to secure financing for such a buy-out and continue to pay the property taxes (unlikely in light of her claimed income), the anticipated dissipation of the equitably distributed assets does not support Plaintiff's request that she receive a greater percentage of the retirement accounts "since she will have no ability in the future to save for her retirement at the level that Husband saves." The Court finds Plaintiff's position disingenuous when considering Plaintiff's intention to use retirement assets to fund the purchase of a home which, by all accounts, she cannot afford. Moreover, the parties owe significant credit card and counsel fee debt and the net proceeds from the sale of the home will be necessary to pay same.

The trial court judge did not reference plaintiff's counsel fees in her opinion, but the certification of services in the appendix puts them at $100,000 through trial, almost none of which had been paid. The judge determined that

the parties' joint pre-complaint credit card debt of $11,545 should be paid from the proceeds of the sale of the marital home prior to those proceeds being evenly distributed. The judge also ruled that each party should assume his or her own post-filing credit card debt. The judge found that amount for plaintiff totaled $14,658. Accordingly, assuming a value of $525,000 for the marital home, which we take from defendant's CIS, plaintiff is likely to net less than $95,000 from the parties' largest non-retirement asset.

Failing to consider plaintiff's need for support pendente lite, rejecting her request for counsel fees and failing to actually consider the value of assets plaintiff would receive in equitable distribution may have made the court's ostensible award of fifty percent of the parties' assets chimerical. Moreover, there is no way of knowing whether the alimony award of $2500 a month augmented by twenty percent of defendant's annual net bonus would permit plaintiff to "maintain a lifestyle that is reasonably comparable to the standard of living enjoyed during the marriage," Crews, 164 N.J. at 17, which defendant in his CIS averred required $13,706 per month to maintain.

Because we cannot on this record evaluate whether the trial court's equitable distribution award "effect[ed] a fair and just division of marital assets," Steneken, 183 N.J. at 299, or whether the court set alimony at a level that will continue for her the standard of living both parties enjoyed prior to their

A-4734-16T3

separation, see Innes v. Innes, 117 N.J. 496, 503 (1990), we reverse those aspects of the divorce judgment relating to equitable distribution, alimony and attorney's fees and remand for further proceedings not inconsistent with this opinion. Further, as the judge who heard the matter has weighed evidence and expressed an opinion as to the credibility of the parties, the hearing should take place before a different judge.[2] See N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 617 (1986).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] In determining an alimony award, that judge should consider whether requiring defendant to pay over an annual percentage of his net bonus "poses a potential 'source of strife and friction' that should be eliminated." Bowen v. Bowen, 96 N.J. 36, 43 (1984) (quoting Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443 (App. Div. 1978)).

A-4734-16T3