**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2370-18T3

JAMES L. MOLLOY,

     Plaintiff-Appellant,

v.

JOAN C. MOLLOY,

     Defendant-Respondent.

_____

Argued telephonically January 23, 2020 -
Decided February 7, 2020

Before Judges Koblitz, Whipple, and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1679-13.

Paul J. Concannon and Shelley D. Albert argued the cause for appellant (Dario, Albert, Metz, Eyerman, Canda, Concannon, Ortiz & Krouse, attorneys; Paul J. Concannon and Shelley D. Albert, on the briefs).

Matheu D. Nunn argued the cause for respondent (Einhorn, Barbarito, Frost & Botwinick, attorneys; Matheu D. Nunn and Jessie M. Mills, on the brief).

PER CURIAM

Plaintiff James L. Molloy appeals from a January 9, 2019 post-judgment order requiring him to pay defendant Joan C. Molloy additional alimony based on his total income, which included income from restricted stock units (RSUs) that were equitably distributed pursuant to the terms of their marital settlement agreement (MSA). For the following reasons, we reverse and remand for a plenary hearing.

The parties divorced in March 2014, following a twenty-six-year marriage. Paragraph fourteen of their MSA required plaintiff to pay a base alimony of $66,667 per year, and an additional lump sum alimony of

> 33.3% of the gross pretax amount of "compensation for lump sum alimony purposes[,]" . . . defined as any salary above $220,000 gross per year and any incentive award, stock, restricted stock award, stock option award, bonus, commission, or other compensation that would be characterized as W-2 or 1099 income paid to [plaintiff] by his employer(s).

In relevant part, paragraph forty-one of the MSA provided defendant 200 of an 1122 award of RSUs from plaintiff's employer. Plaintiff retained the remaining 922 RSUs, and the MSA required he hold defendant's RSUs in a Callahan[1] trust for her benefit. A separate paragraph of the MSA stated:

---

[1] Callahan v. Callahan, 142 N.J. Super. 325 (App. Div. 1976).

> Except as provided in this [a]greement, each party may dispose of his or her property in any way. Each party waives and relinquishes any and all rights he or she may now have or hereafter acquire under the present or future law of any jurisdiction to share in the property or the estate of the other as a result of the marital relationship.

In 2018, the parties disputed whether the additional lump-sum alimony plaintiff calculated and paid to defendant was accurate for 2015 through 2017. The parties engaged counsel to resolve the dispute but were unsuccessful. Plaintiff insisted defendant owed him a credit and refused to pay the additional alimony until she paid the sum. Defendant filed a motion to enforce litigant's rights to recover the lump sum alimony she purported was owed. We focus on the parties' dispute regarding the 2015 alimony calculation, which is related to this appeal.

In her motion, defendant included the 1122 RSUs in her calculation of plaintiff's gross 2015 earnings and calculated his income to be $429,609.69. Pursuant to the MSA, to determine plaintiff's 2015 additional lump sum alimony obligation, defendant subtracted $220,000 and the value of the 200 RSUs attributable to her. She divided the net figure by 33.3%, yielding $59,728.77 as the additional lump sum alimony. She subtracted $13,367.65, which plaintiff previously paid for 2015, leaving $46,361.12 outstanding.

A-2370-18T3

Plaintiff's calculations differed. Utilizing the same total earnings of $429,609.69, he subtracted the total value of the 1122 RSUs, other expenses, and the $220,000 yielding $19,224. Dividing this sum by one-third, plaintiff netted $6408 as the additional lump sum amount. He reasoned because he had paid defendant $13,367, she owed him $6959[2], representing an overpayment.

The motion judge heard oral argument and concluded the following:

> The parties were . . . represented by counsel as they negotiated this agreement . . . and had . . . an opportunity to thoroughly [vet] each and every paragraph within the [MSA] before signing [it].
>
> As such, the [c]ourt finds that this agreement would not appear . . . to be based on any form of coercion, duress, or fraud.
>
> So[,] in light of the absence of any finding of coercion, duress, or fraud the MSA stands as it is written.
>
> Now, [three] and a half years later plaintiff has buyer's remorse and wants to upend the agreement. . . . Clearly and carefully [the MSA] sets forth a base alimony under Paragraph [fourteen.]
>
> And the crux of this argument is . . . the initial lump sum alimony and the amounts and the calculation for the additional lump sum alimony, and what the additional lump sum alimony entails.

---

[2] Plaintiff's final sum was $6960, which we assume was a product of rounding.

A-2370-18T3

Paragraph [fourteen] clearly articulates the term "Compensation for lump sum alimony purposes shall be defined as any salary above $220,000 gross per year, any incentive award, stock, restricted stock award, stock option award, bonus commission, or other compensation that would be characterized as a W-2 or 1099 income paid to husband by his employer."

Therefore, any item that's listed on his W-2, with the exception, I think, of the changed tax law regarding the health insurance, would be characterized as the income.

Now, plaintiff speaks to whether or not the [RSUs] issued in . . . 2012 based on past and future retention was addressed in Paragraph . . . [forty-one], which does not state that it needs to be read in conjunction with, or separate and apart from Paragraph [fourteen].

And the . . . [1122] RSU[]s issued to plaintiff on or about November 22, 2012[,] were issued well in advance of the date on which the parties executed the [MSA] and the final judgment of divorce was entered.

As such, the distribution of the . . . [RSUs] was contemplated at the time the parties executed the MSA. . . . [P]laintiff [cannot] at this point have buyer['s] remorse. He has lived with this agreement since March of 2014.

As a result, I'm going to enforce all provisions of the [MSA] as a valid and enforceable agreement.

The motion judge also rejected plaintiff's argument that relief from the MSA was warranted under Rule 4:50-1. Pursuant to Rule 4:50-2, she found the

5

grounds for relief under Rule 4:50-1(a)-(c) were time-barred and the relief sought under (d)-(f) was also barred because plaintiff's motion was not brought within a reasonable time.

I.

Although we typically defer to a trial court's factual determinations, "[d]iscretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ricci v. Ricci, 448 N.J. Super 546, 564 (App. Div. 2017). A trial court's interpretation of the law is reviewed de novo on appeal. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). A motion for relief under Rule 4:50-1 should be granted sparingly and is similarly addressed to the sound discretion of the trial court, whose determination will not be disturbed absent a clear abuse of discretion. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012).

Plaintiff argues the motion judge's award of additional lump sum alimony based on a calculation of his income using the 922 RSUs he retained under the MSA "constituted an impermissible double-dipping." He asserts defendant's failure to include the income from the sale of the 200 RSUs she received in

equitable distribution proves she understood the 1122 tranche of RSUs was excluded from income for purposes of calculating additional lump sum alimony.

Plaintiff argues the MSA contained an express mutual waiver of all rights each party had in the other's property, including the RSUs distributed pursuant to the MSA. He asserts the MSA should be reformed to cure "a drafting error by [d]efendant's counsel, to avoid an unconscionable result" because defendant's receipt of "[seventy-three percent] of the net value of the RSUs" was "unconscionable." Plaintiff contends he did not intend such a result and the motion judge erred in resolving the material factual dispute without a plenary hearing.

A.

A marital settlement agreement is a contract that is enforceable to the extent it is fair and equitable. Peterson v. Peterson, 85 N.J. 638, 642 (1981) (citations omitted). "The very consensual and voluntary character of these agreements render them optimum solutions for abating marital discord, resolving matrimonial differences, reaching accommodations between divorced couples, and assuring stability in post-divorce relationships." Konzelman v. Konzelman, 158 N.J. 185, 194 (1999). "Marital agreements . . . are approached with a predisposition in favor of their validity and enforceability." Massar v. Massar, 279 N.J. Super. 89, 93 (App.

A-2370-18T3

Div. 1995) (citation omitted). Such arrangements "'should not be unnecessarily or lightly disturbed.'" Konzelman, 158 N.J. at 193-94 (quoting Smith v. Smith, 72 N.J. 350, 358 (1981)).

At the outset, we reject plaintiff's argument the lump sum alimony calculation required the motion judge to include defendant's share of the RSUs. The MSA clearly states "[i]ncreases in [defendant's] earned income shall reduce [plaintiff's] alimony obligation." The liquidation of defendant's share of the RSUs constituted a realization of unearned income and did not affect alimony.

We also reject plaintiff's argument the MSA created an "impermissible double-dipping" pursuant to Innes v. Innes, 117 N.J. 496 (1990) and N.J.S.A. 2A:34-23(b). Innes and the statute stand for the proposition that retirement benefits treated as assets for purposes of equitable distribution shall not be considered income for purposes of determining alimony. 117 N.J. at 504-05. The RSUs were not a retirement benefit but earned income.

In Steneken v. Steneken, 183 N.J. 290 (2005), our Supreme Court upheld the use of a normalized income calculation for purposes of determining equitable distribution of a business operated by the supporting spouse and an entirely different income amount based on the spouse's actual earnings for purposes of calculating alimony. The Court stated:

Although some jurisdictions do prohibit the disparate alimony and equitable distribution calculations defendant finds objectionable, others allow it. . . . Because we embrace the premise that alimony and equitable distribution calculations, albeit interrelated, are separate, distinct, and not entirely compatible financial exercises, and because asset valuation methodologies applied in the equitable distribution setting are not congruent with the factors relevant to alimony considerations, we conclude that the circumstances here present a fair and proper method of both awarding alimony and determining equitable distribution.

We find no inequity in the use of the individually fair results obtained due to the use of an asset valuation methodology normalizing salary in an on-going close corporation for equitable distribution purposes, and the use of actual salary received in the calculus of alimony. The interplay of those two calculations does not constitute "double counting."

[Id. at 301-02.]

The same principles apply here. Plaintiff's share of the 1122 tranche of RSUs was not liquidated and paid to defendant as alimony. He retained his equitable distribution. However, under one reading of the MSA those shares were reported as plaintiff's income for 2015, and were therefore includable for purposes of calculating his overall income and the additional lump sum alimony award.

B.

We are constrained to remand the matter for a plenary hearing because the parties' common intent respecting the treatment of the 1122 RSU tranche is not readily discernable. Our Supreme Court has stated:

> As a general rule, courts should enforce contracts as the parties intended. . . . Similarly, it is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties. Tessmar v. Grosner, 23 N.J. 193, 201 (1957). The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the "expressed general purpose."
>
> [Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (citations omitted).]

Although "not every factual dispute that arises in the context of matrimonial proceedings triggers the need for a plenary hearing[,] . . . we have repeatedly emphasized that trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications." Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995). Plenary hearings are necessary where they are helpful to resolve material factual disputes. Jacoby v. Jacoby, 427 N.J. Super. 109, 123 (App. Div. 2012). This case presents such a situation.

Indeed, it is possible to read the additional lump sum alimony language consistent with defendant's argument the parties intended to include plaintiff's

share of the 1122 tranche in the calculation of the additional lump sum alimony. However, when the provision is read in conjunction with the parties' mutual express waiver of any interest in the other's equitable distribution, plaintiff's argument the 1122 tranche was not a part of the lump sum alimony calculation is equally plausible. Moreover, the "[e]xcept as provided in this [a]greement" language contained in the waiver paragraph did not resolve whether plaintiff's share of the RSUs were excluded from the alimony calculation because the parties had opposite explanations regarding the reason for the disproportionate distribution of the RSUs in question. The motion judge's findings did not resolve these issues. Therefore, a plenary hearing was necessary to determine the parties' common intention regarding the 1122 RSUs.

C.

Finally, because we remand the matter for a hearing, we do not reach plaintiff's argument concerning reformation of the MSA on grounds of unconscionability. Additionally, this argument was not addressed to the motion judge in the first instance. We decline to consider arguments not raised before the trial court. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2370-18T3